UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAULINE EASTMAN,

    Plaintiff,

v.                                              Case No.: 8:04-cv-2208-T-17-TBM

TROPICANA PRODUCTS, INC.
A foreign corporation,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's, Tropicana Products, Inc., Motion for Summary Judgment, filed October 12, 2005 (Dkt. 13). Also before this Court are the Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment (Dkt. 14), Defendant's Corrected Motion for Summary Judgment (Dkt. 15), and Plaintiff's response thereto, filed on October 14, 2005 (Dkt. 20). The Court is treating Document 13 as being incorporated within Document 15. As explicated below, the motion for summary judgment is granted.

### BACKGROUND/ PROCEDURAL HISTORY

On October 6, 2004, Plaintiff Pauline Eastman ("Eastman") filed this action against Defendant Tropicana Products, Inc., a foreign corporation, ("Tropicana") alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Dkt. 1). Tropicana answered the complaint on November 4, 2004 (Dkt. 4). Tropicana moved for summary judgment on October 12, 2005 (Dkt. 15), and Eastman filed a memorandum in opposition on December 10, 2005 (Dkt. 20). The following are found to be "facts" for purposes of resolving the motion for summary judgment.

In 1993, Eastman, a black woman, began working for Tropicana as a seasonal Grader in the Fruit Receiving Department in Bradenton, Florida. During her employment with Tropicana, Eastman received a copy of the collective bargaining agreement and its addendum (CBA), which set forth the procedures that Tropicana was, and is, to follow with respect to the terms and conditions of workers that are covered by Teamsters Local 173. During her employment with Tropicana, Eastman also received a copy of Pepsico's Equal Employment Policy, which applies to Tropicana employees and forbids retaliation against employees who complain or express concern about discrimination.

On one day in March 2003, Tropicana's Fruit Receiving Department shut down one of the four lines because there was not enough fruit coming in to run all lines. Two white graders and one Asian grader were assigned to that line. Eastman complained to Peter Haines, the Human Resources representative, and stated that the particular line was shut down due to racial inequalities. Eastman did not receive any disciplinary action subsequent to her discussion with Mr. Hayes.

At the beginning of the new season in May 2003, Eastman was given an opportunity to sign-up for clean-up duty. Eastman did not accept this opportunity, but around the month of November changed her mind. However, because she did not sign up for preseason cleanup, she was not allowed to start the job in-season, and was assigned to come back on November 24 to operate a line. Tropicana began to call other employees to operate lines on November 10 and 17, 2003. Eastman believes that when one of the workers was not able to begin on November 17 because of an arm injury, she should have been called to fill in that position on the same date because of her seniority. However, Tropicana did not call Eastman until November 24.

In early January, Tropicana needed an employee to fill a vacancy on the first shift. Tropicana informed Eastman that she would be moved to first shift as of January 7, 2004, in accordance with the seniority provisions of the CBA, because no other grader with more seniority than Eastman wanted to move to first shift.

On or about January 12, 2003, Eastman filed a grievance with her union alleging she was improperly called back two weeks late in November 2003. (Pl. Depo. pp. 74-74, Ex. 1, 8, 9). To the extent Eastman attempted to file a grievance regarding her shift

reassignment, the union declined to process it. On or about February 2, 2003, Eastman's grievance was denied by the Grievance Review Committee, which consisted of company and union representatives. (Pl. Depo. pp. 75-79, Ex. 1 (Arts. 30, 34), Ex. 10).

On or about February 5, 2004, Eastman filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) claiming Tropicana retaliated against her for complaining about race discrimination in March 2003, when it did not call her back until two weeks after the season started in November 2003, and when it moved her from third shift to first in January 2004. (Verified Complaint, Ex. A). On February 10, 2004, Eastman was offered an open grader position on the third shift, which she declined. (Pl. Depo. p. 112, Ex. 12). On or about August 5, 2004, Eastman received a dismissal and notice of rights from the EEOC regarding her charge, which stated that the EEOC was unable to conclude that the information obtained established violations of the statutes. (Pl. Depo. pp. 152-53, Ex. 18).

**STANDARD OF REVIEW**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party…" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

**DISCUSSION**

Defendant has filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (c), stating that no genuine issue of material fact regarding the plaintiff's claims in the case exist, and that the defendant is entitled to judgment against the plaintiff as a matter of law. In order for Plaintiff Eastman to succeed in its current claim of retaliation under Title VII, she must show that: (1) she engaged in a statutory-protected expression, (2) she suffered an adverse employment action, and (3) there is some causal relation between the two events. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457 (11th Cir. 1998), *see also MacLean v. City of St. Petersburg*, 194 F. Supp. 2d 1290 (M.D. Fla. 2002). Tropicana asserts that Eastman has failed to establish the first and third elements of her retaliation claim under Title VII.

**A.  Engaging in Statutorily Protected Expression**

First, Tropicana asserts that Eastman cannot establish that she engaged in a statutory-protected expression. Statutory-protected expression can either fall under the "participation clause" or the "opposition clause" of Title VII, 42 U.S.C. § 2000e-3(a). Opposing employment practices made unlawful by Title VII is considered protected activity under the opposing clause. To be protected under the opposition clause, an employee must have a good faith, objectively reasonable, belief that her employer has engaged in unlawful discrimination. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

> The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against the existing substantive law. Opposition Clause acts are viewed in the context of the ordinary business environment, and, thus, are given less protection than Participation Clause acts.

*Anduze v. Fla. Atl. Univ.*, No. 04-16198, 2005 U.S. App. LEXIS 21255, at *8 (11th Cir. Sept. 29, 2005) (per curiam).

In this case, whether to shut down one of the lines because not as much fruit was coming in was a business decision. Furthermore, Tropicana did not approve of any employee receiving pay without doing work, and notified employees of the closed line

that they were still expected to clean or do other work. "It is not for the courts to second-guess as a kind of super-personnel department." *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1176 (11th Cir. 2000). See *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999) (noting that court is not concerned with whether employment decision was prudent or fair but only with whether it was motivated by unlawful discriminatory animus).

Even if Eastman had a good faith belief that Tropicana engaged in unlawful race discrimination, Eastman's conduct was not protected by the opposition clause, because her belief was not objectively reasonable. *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (summary judgment affirmed as plaintiff did not have objectively reasonable belief that he was opposing an unlawful employment practice).

### B. Causal Connection between the Protected Expression and the Adverse Action

Second, Tropicana asserts that Eastman cannot prove that any of these actions were taken because Eastman expressed a concern regarding alleged race discrimination. Even if Eastman did engage in a statutory protected expression, there was no causal connection between that expression and the adverse action.

"To prove a causal connection, we require a plaintiff only to demonstrate 'that the protected activity and the adverse action were not wholly unrelated.'" *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337(11th Cir. 1999). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence." *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (1lth Cir. 1993) (internal citations omitted)). "We have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse employment action." *Farley*, 197 F.3d at 1337.

5

As to the temporal proximity element, courts have stated that, "if there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (3-month delay too long to reasonably infer causation); *also see Wascura v. City of S. Maimi*, 257 F.3d 1238, 1248 (11th Cir. 2001). In the present case Eastman reported the alleged discrimination in mid-March 2003, and the two alleged retaliatory acts occurred almost nine months and a full ten months later, respectively. (Verified Complaint, ¶¶ 9, 13, 16). Eastman argues that this Court should consider the facts under a special circumstance that Eastman was laid off in May 2003. However, in her own affidavit, Eastman admits that her lay-off was voluntary. (Eastman Aff. ¶ 6). Therefore, neither action by Tropicana is sufficiently close to Eastman's complaint of alleged race discrimination to establish a causal connection or support a *prima facie* case of retaliation. Accordingly, it is

**ORDERED** that the Defendant's Motion for Summary Judgment (Dkts. 13 and 15) be **GRANTED**, and the Clerk of Court is **directed** to enter judgment for the defendant and close this case.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 20th day of April 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record